Kathryn Brack Morrow
Karen Budd-Falen (*pro hac vice* pending)
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming  82003
(307) 632-5105 Telephone
(307) 637-3891 Facsimile
*Attorneys for Petitioner*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| **THE NEW MEXICO OFF-HIGHWAY VEHICLE ALLIANCE**, a New Mexico nonprofit corporation,<br><br>                Petitioner,<br><br>v.<br><br>**UNITED STATES FOREST SERVICE**, an agency of the United States Department of Agriculture, **THOMAS TIDWELL**, in his official capacity as Chief of the United States Forest Service, **MARIA T. GARCIA**, in her official capacity as Santa Fe National Forest Supervisor, **GILBERT ZEPEDA**, in his official capacity as Southwestern Region Deputy Regional Forester, **UNITED STATES DEPARTMENT OF AGRICULTURE**, and **TOM VILSACK**, in his official capacity as Secretary of the United States Department of Agriculture,<br><br>                Respondents. | Civil Action No. _____ |

## PETITION FOR REVIEW OF AGENCY ACTION

1. Petitioner The New Mexico Off Highway Vehicle Alliance ("NMOHVA"), by and through its undersigned attorneys, Kathryn Brack Morrow and Karen Budd-

Falen (*pro hac vice* pending) of the Budd-Falen Law Offices, LLC, hereby petitions this Court for review of Respondents' final agency action implementing the Record of Decision for Travel Management on the Santa Fe National Forest ("ROD") and its corresponding Final Environmental Impact Statement for Travel Management on the Santa Fe National Forest ("FEIS").

2. NMOHVA is a nonprofit corporation, incorporated in 2006 under the laws of New Mexico, with its principal place of business in Albuquerque, New Mexico. NMOHVA is a statewide alliance of motorized off-highway vehicle enthusiasts and organizations who promote, protect, and preserve responsible off-highway vehicle recreation through education, safety training, and responsible land use ethics. Respondents' ROD and FEIS adversely affect and injure NMOHVA and its members through the wrongful prohibition of motorized access and motorized recreation on roads and trails in the Santa Fe National Forest ("Forest"), including both the routes part of the Santa Fe National Forest Transportation System ("system routes") and other roads and trails not part of the system ("non-system routes").

3. Respondents United States Forest Service, an agency of the United States Department of Agriculture, Thomas Tidwell, in his official capacity as Chief of the United States Forest Service, Maria T. Garcia, in her official capacity as Santa Fe National Forest Supervisor, Gilbert Zepeda, in his official capacity as Southwestern Region Deputy Regional Forester, United States Department of Agriculture, and Tom Vilsack, is his official capacity as Secretary of the United States Department of

Agriculture, are charged with the administration of the Forest. Throughout this Petition, Respondents will be collectively referred to as the singular "USFS."

4. The final agency action to be reviewed in this case is the final agency action implementing the Record of Decision for Travel Management on the Santa Fe National Forest, signed on June 12, 2012, by Respondent Maria T. Garcia. That decision was based on the Final Environmental Impact Statement for Travel Management on the Santa Fe National Forest, dated June 2012. Notice of these actions was not published in the Federal Register by USFS; however, notice was published on July 6, 2012, in the Albuquerque Journal.

5. NMOHVA appealed the ROD and EIS pursuant to 36 C.F.R. Part 215. Appeal Nos. #12-03-00-0034-A215, #12-03-00-0039-A215. Those appeals, in addition to nineteen others, were consolidated and denied in a decision issued on October 2, 2012 by Respondent Gilbert Zepeda.

6. The final agency action is reviewable by this Court pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 and Fed. R. App. P. 15. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) ("Reviews of agency action in the district courts must be processed as appeals. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure."); *WildEarth Guardians v. United States Forest Service*, 668 F. Supp. 2d 1314, 1323 (D.N.M. 2009) ("Pursuant to *Olenhouse* . . . , claims under the APA are treated as appeals and governed by reference to the Federal Rules of Appellate

Procedure.").

    7.    As such, this Court has federal-question jurisdiction under 5 U.S.C. § 1331. Furthermore, jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1346(a)(2), as this action is against the United States and is founded upon an act of Congress.

    8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as Santa Fe National Forest, the property that is the subject of the action, is situated wholly within the District of New Mexico. Moreover, a substantial part of the events or omissions giving rise to the claim occurred within the District of New Mexico. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1402, as NMOHVA resides in the District of New Mexico.

    9.    Prior to the final agency action at issue, the public's right to travel through the Forest was governed by the Santa Fe National Forest Plan, published in 1987. Under the Forest Plan and its corresponding policies, the public has had a right to travel on all existing routes (roads and trails), including all system routes and all non-system routes. While the ROD refers to travel on non-system routes as "unauthorized," until the implementation of the ROD, public travel on non-system routes has always been legal.

    10.    The effect of the ROD is the elimination of at least 69% of the routes previously identified by USFS as system and non-system routes.[1] Broken down, the

---

[1] *See* FEIS Table 72. (7,832 - 2,463 = 5,369, or 69% of routes eliminated.) Throughout the FEIS, inconsistencies occur concerning the data published by USFS, depending on its location in the FEIS. For example, in Table 4, used by USFS to show its estimated-use calculation, USFS claims there are only 6,899 miles of system routes. In Table 75, that same data is listed as 6,918. In its written explanation of the same data,

-4-

ROD eliminated 66% of system routes and at least 85% of non-system routes.[2] The effect of the FEIS was the pre-analysis elimination of 26% of system routes and the pre-analysis elimination of at least 41% of non-system routes.[3]

    11.    By the final agency action, USFS violated the Administrative Procedure Act, 5 U.S.C. § 701-706 and the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* Specifically, USFS violated both laws as follows:

    a.    USFS acted arbitrarily by failing to include a true no-action alternative as required by 40 C.F.R. § 1502.14. A no-action alternative refers to the level of activity currently allowed under law, if no change is implemented. *See Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1040 (10th Cir. 2001); 46 Fed. Reg. 18027; *see, e.g.*, *Silverton Snowmobile Club v. U.S. Forest Svc.*, 433 F.3d 772, 777 (10th Cir. 2006) (no-action alternative would leave management rules unchanged).

    i.    Here, USFS did not include a true no-action alternative. A true no-action alternative would describe what activity is allowed under

---

USFS states this same mileage as 7,515. FEIS, at 274. Throughout this Petition, NMOHVA uses the data provided from whichever table is relevant.

    [2]    *See* FEIS Table 72. (7,832 - 914 = 6,918 system routes; 2,463 - 138 = 2,325 system routes; 6,918 - 2,325 = 4,593, or an elimination of 66% of system routes; 914 - 138 = 776, or an elimination of 85% of non-system routes.)

    [3]    *See* FEIS Table 4. (6,899 - 5,087 = 1,182, or a pre-analysis elimination of 26% of system routes; 914 - 540 = 374, or a pre-analysis elimination of 41% of non-system routes.)

the current motorized travel policy as published in the Forest Plan. USFS explicitly recognizes that the "current motorized travel policy is **not** an alternative considered in detail." FEIS, at 273 (emphasis in original).

ii. Pursuant to the current motorized travel policy, the public may legally use existing roads or trails (whether they are system routes or non-system routes). In the FEIS, USFS recognizes 6,918 miles of system routes and 914 miles of non-system routes throughout the Forest.[4]

iii. Instead of using the activity currently allowed by the Forest policy, as described in the preceding paragraph, USFS arbitrarily changed the definition of the no-action alternative to an alternative including only USFS's estimate of which roads and trails are currently used by the public, labeled as "where people drive now."[5]

iv. In addition to USFS violating NEPA by redefining no-action alternative into an estimated-use alternative, USFS acted arbitrarily using its "method" to estimate use.

v. By estimating use and removing such significant mileage from the "no-action" alternative, USFS arbitrarily skewed the results of

---

[4] As discussed above in footnote 1, USFS states this mileage inconsistently throughout the FEIS. *See, e.g.*, FEIS Table 4 (6,899); FEIS Table 75 (6,918); FEIS, at 274 (7,515). Even if the smallest number is used, the significance of USFS's failure to present a true no-action alternative is significant and violative of NEPA and the APA.

[5] USFS's redefinition of the no-action alternative as "where people drive now" appears throughout the FEIS. *See, e.g.*, FEIS at vi, 17, 56.

every comparison between the no-action alternative and the action alternatives considered.[6] An invalid baseline leads to false comparisons, and since the alternative comparisons are the foundation of NEPA analysis, USFS's actions relying on those false comparisons are necessarily invalid, as well.

b.  USFS acted arbitrarily by eliminating without analysis a significant portion of the USFS system routes by redefining the no-action alternative to represent the USFS's estimated-use alternative.

i.  By implementing its estimated-use alternative in lieu of a true no-action alternative, USFS eliminated 26% of its system routes from the start, without any analysis.[7] By simply removing those routes from its "no-action" alternative, USFS "entirely failed to consider an important aspect": namely one fourth of the system routes. Failing to analyze such a substantial cut in services currently provided by USFS violates NEPA and the APA; therefore, the decision is arbitrary and capricious. *New Mexico*

---

[6]  *See* FEIS Table 1 and corresponding text ("For motorized opportunities, choosing any of the action alternatives (2 through 5) significantly reduces the places where people can drive in the Santa Fe National Forest from the existing condition. The total amount of roads and trails open for motorized use would be reduced by 46 to 67 percent depending on the alternative selected . . . ."). Based on a true no-action alternative, the total amounts of roads and trails open for motorized use would actually be reduced by at least 61% with a potential reduction of 76% of the current opportunities. *See* FEIS Table 72.

[7]  *See* FEIS Table 4, describing USFS's estimated-use alternative. (6,899 - 5,087 = 1,812 miles eliminated, or 26% of 6,899.)

*ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 704 (10th Cir. 2009).

      ii.    Moreover, substituting its estimated-use alternative for the required no-action alternative created a predetermined result that at least 26% of its USFS system routes would be closed without analysis. Predetermination occurs when the agency commits itself to a certain outcome before it has completed that environmental analysis. *Forest Guardians v. U.S. Fish & Wildlife Svc.*, 611 F.3d 692, 714 (10th Cir. 2010). The Travel Management Rule, 36 C.F.R. § 212.50, dictates that routes not designated become closed automatically, and by removing those 26% of system routes from the NEPA analysis required for designation, USFS committed itself to a certain outcome: the closure of those system routes. Therefore, USFS violated NEPA's prohibition on predetermined results.

      iii.    Finally, by eliminating those 26% of system routes from the "no-action" alternative—and thus from all other alternatives—USFS skirted the NEPA requirement that it "must 'rigorously explore and objectively evaluate' all reasonable alternatives." *New Mexico*, 565 F.3d at 703 (*quoting* 40 C.F.R. § 1502.14). Instead, USFS eliminated those routes with no analysis whatsoever, making its action arbitrary and capricious.

c.    In addition to the 26% of the system routes arbitrarily eliminated by the creation of its "no-action" alternative, USFS eliminated at least 41% of

non-system routes by estimating their non-use.[8] USFS now deems these routes "unauthorized," yet prior to the ROD, the public could legally use these non-system routes.[9] By eliminating 41% of those routes from its "no-action" alternative, USFS arbitrarily closed those previously legal routes to motorized use without analyzing them for their impacts or the impacts of their closure.[10] For the same reasons discussed in paragraph 11(b) concerning USFS's elimination of system routes prior to any analysis, USFS's elimination of these non-system routes is similarly arbitrary and capricious.

    d.    USFS also violated NEPA by its restrictively narrow listed alternatives. NEPA requires "all agencies of the Federal Government . . . study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E). "The 'heart' of an EIS is its exploration of possible alternatives to the action an agency wishes to pursue."

---

[8]    *See* FEIS Table 4. (914 - 540 = 374 miles eliminated, or 41% of 914.)

[9]    A potential illegal route would be a trail created by certain users (e.g., mountain bikes or motorcycles) through a wilderness area, where motorized travel is prohibited under the current policy. Illegal routes are wholly separate from "unauthorized" or non-system routes.

[10]    NMOHVA also points out that more legal non-system routes likely exist based on the past policy of cross-country travel across 821,644 acres of the Forest. Any such routes not included by USFS necessarily are also eliminated without analysis. Each mile of such undocumented routes increases the significant percentage of such routes summarily closed by USFS with the substitution of its estimated-use alternative for a true no-action alternative.

*New Mexico*, 565 F.3d at 708. "Without substantive, comparative environmental impact information regarding other possible courses of action, the ability of an EIS to inform agency deliberation and facilitate public involvement would be greatly degraded." *Id.*

      i.    First, the range of alternatives proposed is too narrow to be considered reasonable. *See* Figure 1. Not considering USFS's "no-action" alternative, the other four proposed alternatives differed by only 1,148 miles of routes eliminated, only 15% of those 7,832 miles of system and non-system routes recognized by USFS under the current policy.[11] The range is so narrow that when discussing the effects of the alternatives, USFS repeatedly discusses alternatives two through five collectively. *See, e.g.*, FEIS at 87, 93.

      ii.    Second, USFS's choice of such a small range of alternatives proposed coupled with the fact that the "no-action" alternative on its face cut at least 28% of system and non-system routes similarly violates NEPA requirement of a reasonable range of appropriate alternatives.[12] Based on the selection of these alternatives, USFS created a framework whereby at

---

[11]    *See* FEIS Table 72. (3,017 - 1,869 = 1,148, or 15% of 7,832.)

[12]    *See* FEIS Table 72. (7,832 - 5,626 = 2,206 miles eliminated, or 28 % of 7,832.)

least 2,206 miles of routes (28%) would be eliminated.[13] That decision violates both the prohibition against predetermined outcomes and requirement to consider reasonable alternatives.



Figure 1. Range of Alternatives

Shown in miles of routes open to motorized travel. Data from FEIS Table 72.

---

[13] *See id.*

    e. USFS's decision is also arbitrary and capricious based on its pre-decision assumptions that closing more miles of routes equals decreasing damage and that decreasing motorized use equals decreasing damage. These assumptions lay the foundation for the FEIS and both run counter to the evidence in the project record and are clear errors of judgment, and thus, violate NEPA. *See New Mexico*, 565 F.3d at 704.

    i. First, evidence is the record suggests that the existence of certain routes have detrimental impacts; however, no evidence in the record suggests that eliminating motorized use from roads and trails (without any sort of reclamation) will decrease damage.[14]

    ii. Second, no evidence in the record supports the assumption that motorized use on roads and trails contributes to any damage caused by the physical characteristics of the routes themselves (e.g., location, soil type, water crossing, etc.). Additionally, USFS provides no analysis whatsoever on this singularly important topic to an FEIS considering the drastic reduction of motorized use in the Forest: the actual effects of motorized use.

    iii. Lacking any evidence necessary to determine the actual effects of certain uses (i.e., motorized travel), USFS arbitrarily employed

---

[14] None of the alternatives propose physically altering the existing routes; only changing uses of those routes was proposed.

faulty methodology. The methodology is based entirely on errors of logic: The first error is equating miles of route (physical entities) with usage (transient events). The second, and more egregious, error is that the entire FEIS comparison of alternatives is based on the presumption that "more miles equal more damage." The empirical evidence in the project record shows the fundamental assumption in the methodology is wrong; instead, it provides that the current policy (with the maximum possible miles open to motorized travel) has resulted in no significant resource damage, even over many decades of use. Yet this illogical and fatally flawed methodology is the sole foundation for the "analysis" in the FEIS and ROD, and therefore, violates NEPA and the APA.

    f.    Finally, USFS acted arbitrarily and capriciously in numerous ways in its decision concerning the Jemez Mountain salamander ("JMS"), including its predetermination concerning routes in and near JMS habitat prior to proposing alternatives, its failure to consider relevant facts in the project record concerning the JMS, and its clear contradiction with evidence in the project record that motorized travel on existing routes has had no or minimal effect on the population for decades.

12.    Accordingly, NMOHVA respectfully requests this Court:

    a.    Declare that USFS violated NEPA and the APA in implementing its Record of Decision for Travel Management on the Santa Fe National Forest

("ROD") and its corresponding Final Environmental Impact Statement for Travel Management on the Santa Fe National Forest ("FEIS");

  b. Set aside and vacate the final agency action implementing USFS's ROD and FEIS, thereby reinstituting the previous travel management policy throughout the Santa Fe National Forest;

  c. Award NMOHVA its reasonable fees, costs, and expenses (including attorney's fees) incurred as a result of this litigation; and

  d. Grant NMOHVA such further or additional relief as this Court may deem just and proper.

Respectfully submitted this 10th day of December, 2012.

        <u>/s/Kathryn Brack Morrow</u>
        Kathryn Brack Morrow
        Karen Budd-Falen
        Budd-Falen Law Offices, LLC
        300 East 18th Street
        Post Office Box 346
        Cheyenne, Wyoming 82003–0346
        (307) 632-5105 Telephone
        (307) 637-3891 Facsimile
        kathryn@buddfalen.com
        karen@buddfalen.com

        *Attorneys for Petitioner*